IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GIULLIAN STEELE, YURY X. BASTOS, JARROD DENYER, SUSAN MCMILLAN, ROBERT KENLY MUSCH, RACHEL HERRON, GIOVANNI BOLIVAR VALAREZO, AMANDA LEIGH SANCHEZ, BRIDGETTE SMITH and BRANDON BRITT<br><br>vs.<br><br>LEASING ENTERPRISES, LTD. | § § § § § § § § § § § § | CIVIL ACTION NO. 4:09-CV-02789<br>(COURT UNIT OF JUDGE HUGHES)<br>[JURY TRIAL DEMANDED] |

# DEFENDANT LEASING ENTERPRISES, LTD.'S
# RULE 56 CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

DEFENDANT LEASING ENTERPRISES, LTD. ("LEL") files this FED.R.CIV.P. 56 Cross-Motion For Partial Summary Judgment ("Motion")[1] as follows:

## I. SUMMARY OF ARGUMENT

A restaurant's assessing a fee to a server to convert his or her credit card tips to cash does not automatically violate the FLSA where the fee is greater than the discount rate charged by the credit card issuer. Such fees are lawful when they are reasonable and their assessment does not provide a windfall to the restaurant. There is no genuine issue of material fact that LEL's credit card tip offset fee is reasonable and does not exceed its expenses related to providing servers instant access to cash. The expenses are legitimate and properly relate to the cost of imparting instant monetary gratification to a server, well before regular paydays. Therefore, this Court should dismiss this claim.

---

[1] LEL files this Cross-Motion without waiving its FED.R.CIV.P. 12(b)(6) Motion previously filed concerning the claims in the Third Amended Complaint. LEL also does not waive its contention that the appropriate statute of limitations, and therefore the appropriate time period for purposes of demonstrating compliance with the FLSA, extends back no further than two years before the date of filing of this lawsuit, or two years before any particular plaintiff joined this lawsuit, whichever occurs later. Also, this Cross-Motion is "partial" because it does not address the "retaliation" claim filed by Plaintiff Steele.

1

## II. SUMMARY JUDGMENT EVIDENCE

LEL's summary judgment evidence and its discussion of that evidence contains proprietary or confidential information. Therefore, LEL has filed under seal such evidence and the "background facts" portion of this Motion (Attachment "A").

## III. FACTUAL BACKGROUND

Servers receive cash for their tips at the end of each shift that they work at the restaurant which is the subject of this lawsuit, including cash for tips charged by a customer to a credit card. As set forth in Attachment "A" and the corresponding exhibits filed to support this Motion, the material undisputed facts demonstrate that in each of the three calendar years identified by the Court to be covered in the Motion, LEL's converting these tips to cash immediately cost more than the fee assessed to the server for this conversion process. *See* Exhibit "C." This evidence also demonstrates that the expenses included in these calculations were all legitimately related to the task of conversion. *See* Attachment "A" and Exhibits "A," "B," "C," "D," "E," and "F."

## IV. ARGUMENT AND AUTHORITIES

### A. INTRODUCTION

Plaintiffs contend that LEL has failed to remit to tipped employees their net tips received after converting to cash all tips left through credit cards. They premise this position on the supposition that when LEL converted those tips into cash, it violated the FLSA by deducting from such tips a fee that was greater than the discount rate charged by credit card issuers or bank clearinghouses to process such transactions. The law does not restrict LEL to assessing only credit card issuer fees when converting credit card tips to cash. Rather, LEL is entitled to identify and account for reasonable expenses as exchange costs related to the task of immediate conversion. In doing so in this case, LEL has not violated the FLSA.

## B. APPLICABLE LAW

### 1. *Myers v. Copper Cellar Corporation*: Background Facts

To support their assertion about LEL's alleged violation of the FLSA by its credit card offsets procedure at the Woodlands Restaurant, Plaintiffs have focused upon the decision by the United States Court of Appeals for the Sixth Circuit in *Myers v. Copper Cellar Corp.*, 192 F.3d 546 (6th Cir. 1999). Certain facts present in the *Myers* case are inapposite to those in this case,[2] but the *Myers* Court does also focus generally on the subject of the propriety of a restaurant's deducting an offset (or service charge) from gratuities when a customer had charged the gratuity "via a credit card or similar instrument." Myers, 192 F.3d at 552.

Regarding this broad contention by the Copper Cellar employees, the *Myers* Court identified the following factual circumstances:

a. At all relevant times, Copper Cellar restaurants accepted credit cards issued by American Express, Visa, Mastercard, Discover, and Diner's Club, for any customer purchase(s).

b. In turn, each credit card company charged the payee (Copper Cellar) a service fee (sometimes called the "discount rate"), which equaled a designated percentage of the total amount posted to the diner's credit account payable to Copper Cellar. Those percentages varied in accordance with the type of credit card used by the customer, the periodic renegotiation of processing terms between the defendant and the specific credit supplier, and other variables.

c. In all instances, because the financial institution computed its settlement charge assessed against the payee with reference to the total amount debited by the payer in the payee's favor, a restaurant patron's addition of a service gratuity to his charged tab would proportionately increase the total service cost billed to the payee/restaurant.

d. Each credit supplier deducted its full handling fee from the credit extended to the payer/customer prior to its surrender of that revenue to the payee/restaurant in discharge of the client's gastronomical indebtedness.

e. The restaurant has deducted, at each shift's end, a fixed standard percentage from

---

[2] For instance, the Myers Court addressed claims brought by "salad mixers," whom the Court identified as individuals who sometimes, but not always, were mixing salads for customers. *Myers*, 192 F.3d at 548.

3

the money which it advanced to the employee in satisfaction of any charged perquisite, as reimbursement for the defendant's expenses incurred in ultimately collecting the tip from the credit-extending institution.

f. Copper Cellar's deduction of a "standard percentage" included a consideration of its cost factors other than the credit card issuers' discount rates; in doing so it was "roughly compensated" for its overall expenditures incurred in connection with liquidating charged tips for its employees.

g. During the three year period at issue, Copper Cellar had instituted a standard composite deduction rate from its employees' charge card tips.[3]

192 F.3d at 552-53.

### 2. *Myers v. Copper Cellar Corporation*: Legal Conclusions

1. In appraising the legal backdrop of the FLSA applicable to the issues before it, the *Myers* Court noted the following:

> Although no controlling judicial precedent has addressed the joined question, it is clear that, as a matter of law, an employer may subtract a sum from an employee's charged gratuity which reasonably compensates it for its outlays sustained in clearing that tip, without surrendering its section 203(m) partial set-off against minimum wages. Whereas Congress intended that, with the exception of tip pooling, a tipped employee must be permitted to retain *all* of his or her gratuities as a prerequisite to the employer's invocation of the statutory tip credit, Congress patently did *not* intend that the tipped employee should ever receive *more* than that amount. Before an employee can be entitled to attain any funds on account of a charged customer gratuity, that debited obligation must be converted into cash.

192 F.3d at 553.

2. Accordingly, the *Myers* Court held that a tipped employee is only entitled to receive the cash proceeds of the charged tip *net of liquidation expenses*. 192 F.3d at 553-54. The Court also stated that "it is clear that a charged gratuity becomes a "tip" only after the employer has liquidated it and transferred the proceeds to the tipped employee; prior to that transfer, the employer has an obvious legal right to deduct the cost of converting the credited tip to cash. *Id.* at 554.

3. The *Myers* Court went on to opine as follows:

---

[3] The Myers Court noted that (as in the present case) different credit card issuers charged different discount percentages of the total amount charged. *Myers*, 192 F.3d at 553 n. 13.

> [T]his forum rejects the proposition that, to avoid invalidation of the tip credit, an employer's deduction from an employee's credit card tip may not, under any circumstances, exceed the actual service charge imposed by the credit service provider with respect to the specific charged gratuity at issue. To the contrary, this court concludes that the employer may, consistent with the letter and spirit of the FLSA, withhold a standard composite percentage from each credit card tip, even if, as a consequence, some deductions will exceed the expense actually incurred in collecting the subject gratuity, *as long as* the employer proves by a preponderance of evidence that, *in the aggregate*, the amounts collected from its employees, over a definable time period, have reasonably reimbursed it for no more than its total expenditures associated with credit card tip collections.

192 F.3d at 554 (Original Emphasis).

4.  Indeed, the *Myers* Court[4] opined that an employer could recoup reasonable processing fees from a tipped employee upon the presentation of proper evidence as to the cost of credit card processing. 192 F.3d at 554 n. 15. The theory undergirding this opinion was that an could be "reasonably compensated . . . for no more than the overall costs of processing credit card tips, rather than other costs of doing business[.]" *Id.*

5.  The *Myers* Court concluded its analysis of the legal issue presented with the following statements:

> Congress intended, via section 203(m), to permit an employer, at least in some instances, to credit itself with the average, instead of the actual, expense incurred in providing a valuable service or commodity to its employees. Additionally, an employer's extraction from each charged employee tip of a fixed composite percentage handling fee, which reasonably reimburses it in the aggregate for its total expenditures related to processing its employees' total credit card tips, may be analogized to a Congressionally-sanctioned tip pool.

192 F.3d at 555-56 (Citation Omitted).

6.  The Myers Court noted the advantage to the tipped employees in being able to get "cashed out" at the end of each shift. *Id.* at 556.[5]

### 3. *Myers v. Copper Cellar Corporation*: Result

1.  Against the backdrop of the legal landscape it reviewed, the *Myers* Court then turned to the facts of the case at hand.

---

[4] Citing *Reich v. Priba Corporation*, 890 F.Supp. 586 (N.D. Tex. 1995).

[5] The Myers Court even suggests that on occasion an employer's assessment of a credit card tip offset charge "may exceed, by a few cents" the amount withheld from the tipped employee. 192 F.3d at 556.

2. It ruled that the standard percentage fee charged by the restaurant in that case was "reasonably compensatory," and did not therefore violate the FLSA nor "divest the defendant of its statutory tip credit." 192 F.3d at 556.

### 4. *Bollenberg v. Landry's Restaurant*

1. This Court was confronted with a similar situation in *Bollenberg v. Landry's Restaurant*, 2005 WL 2121810 (S.D. Tex. Aug. 30, 2005) (Hughes, J.) (not reported in F.Supp.2d).

2. This Court ruled that claims akin to those in this case do not violate 29 U.S.C. §203(m), and this Court cited the *Myers* decision in its opinion.[6]

3. This Court first noted that a tip and a credit card fee are not analogous. *Id.* at *3. The Court then analyzed what occurs when a credit card charge has to be processed by a restaurant, and indicated that the decision, for example, to convert promptly credit card tips to cash imposes a cost upon a restaurant, such as "excessive bookkeeping." *Id.*

4. In doing so, this Court concluded that "[n]either the statute nor the regulations contemplate that employers absorb the cost of converting charged tips to cash. The law does not force employers to repay workers because they have withheld the costs of conversion." *Id.* at *5.[7]

5. This Court therefore ruled that the Plaintiff's "motion for partial summary judgment will be denied, and Landry's [motion] will be granted on the lawfulness of deducting ***the discount, fee, or other exchange costs*** to arrive at a net present American cash amount." *Id.* at *5 (emphasis added).

---

[6] "In the case of a charged tip, the employee keeps the net tip after its conversion to cash." *Id.* at *3.

[7] In making its ruling, this Court was actually addressing a server's challenge that no credit card tip offset of any kind was legitimate. In doing so, the Court acknowledged that the U.S. Department of Labor authorized at least some "conversion fee," and further acknowledged that given the variety of credit card rates and charges, it was not improper for a restaurant to charge a fixed fee to the server for this conversion process. *Id.*

6

## C. DEFENDANT'S "CREDIT CARD OFFSET FEE" DOES NOT VIOLATE THE FLSA

1. The summary judgment evidence demonstrates that even though LEL's credit card offset fee is greater than the highest credit card issuer discount rate charged to it, LEL does not profit from charging that offset fee.

2. Rather, the fee reimburses a part of its reasonable expenses legitimately incurred to provide instant cash gratification to servers at the end of each of their shifts.

3. Exhibit "C" identifies in summary fashion for each of the three years in question the expenses incurred.[8]

4. Exhibits "A" and "B" demonstrate that managers would get to go home 30-45 minutes sooner (and for that matter, would not have to show up prior to the beginning of a shift to count cash to be used for the cash-out process) if they did not have to stop their normal close-out duties to perform the cash out procedure.

5. The summary judgment evidence also demonstrates that LEL had to incur "three times per week" delivery charges to ensure that enough cash would be on hand at every shift (lunch and dinner) to effect the cashout process, because the ordinary business of the Restaurant generated far too little cash in any one shift to permit cashing out of credit card tips at the end of that shift.

6. As the summary judgment evidence demonstrates,[9] LEL did not include other costs that might legitimately have been shown to be related to the cost of converting the tips to cash, particularly the lost time value of money for the 3-4 day lag time between its submission of a credit card transaction to the clearinghouse for processing and its being credited with the cash portion of that transaction. LEL legitimately identified those costs that arise because of credit

---

[8] As to which Plaintiffs only focus upon computer costs, labor costs and delivery service costs.

[9] And contrary to Plaintiffs' dismissive comment that LEL has "thrown in every conceivable cost" and is seeking to extract rent or other business costs from the tip offset.

7

card handling, and assessed these pro-rata (in the case of the computer and credit card issuer costs) or directly (in the case of the labor and the cash delivery costs).

### D. PLAINTIFFS' AUTHORITIES ARE INAPPOSITE

LEL notes in passing that Plaintiffs have invoked several different authorities, both judicial and administrative, in an effort to support their position. None of these provide them any foundation upon which to challenge LEL's evidence or law.

### 1. Plaintiffs' Judicial Authorities

| Cited Case | Page(s) | Distinguishing Factors |
|---|---|---|
| *Vance v. Ala Carte Entertainment, Inc.*, 2003 WL 24311811 (N.D. Ill.) (unpublished) | 4, 9-10 | • Defendants imposed a 5% deduction from tips prior to December 5, 2000 where their net liquidation cost averaged 2.5%.[10] (*1)<br>• Summary judgment was appropriate because the employer "admit[ted] that this [deduction] percentage exceeded [its] actual average cost of liquidating charged tips for its employees."[11] (*1)<br>• Department of Labor investigated the restaurant and determined that its practices violated the FLSA. (*1) |
| *Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D. Tex. 1995) | 4, 8 | • Defendants imposed a 20% deduction from the tips "gentlemen's club" patrons paid waitresses by credit card. (595)<br>• Deduction was allegedly used to reimburse the |

---

[10] The Plaintiffs state that the restaurant in *Vance* "only paid an average of 2.5% *to its credit card companies.*" Plaintiffs' Motion at 9 (emphasis added). Plaintiffs' assertion is doubtful in light of the fact that the district court's only mention of that percentage rate refers to the restaurant's "average *cost of liquidating charged tips* for its employees." Based on the district court's discussion, it is not at all apparent – as the Plaintiffs suggest – that Ala Carte's liquidation cost solely constituted the discount percentage it paid to credit card issuers, exclusive of the additional costs restaurants incur as a direct cause of "cashing out" servers. In fact, the district court quoted the *Myers* decision for the proposition that "[n]othing in the FLSA evidenced a Congressional intent to compel employers to contribute anything to any customer's tip, including any funds required to 'cash out' a charged tip for the benefit of the employee." *Vance* at *1 (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999)).

[11] The Plaintiffs omitted from their discussion of *Vance* that summary judgment was granted on the pre-2000 claims because of the defendants' admission. They also neglect to mention, when identifying that the *Vance* Court did NOT grant summary judgment on all claims, that the reason stated by the Court was that it considered that one issue for trial was "whether Ala Carte's average cost of processing the employees' tips charged to credit cards was less than the amounts they caused to be deducted from plaintiffs' tips during that period." *Id.* at *2. The *Vance* Court clearly indicated that it was not going to tie the employer to a standard of liability based solely upon a comparison of the credit card discount rate and the tip offset rate.

| Cited Case | Page(s) | Distinguishing Factors |
|---|---|---|
| | | club for "fees levied by the credit card companies." (595)<br>• Club was held not to have satisfied its burden of proving that the tip pool arrangement was valid because it "presented no documentation or records [during three day bench trial] to support its contention that a percentage of the withholding covered the reasonable costs of credit card processing." (890 F.Supp. at 596) |
| *Reich v. Chez Robert, Inc.*, 28 F.3d 401 (3rd Cir. 1994) | 4-5 | • Opinion addresses notice requirements related to tip credit, *not* credit card tip deductions related to net liquidation expense. (28 F.3d at 403) |
| *Richard v. Marriott Corp.*, 549 F.2d 303 (4th Cir. 1977) | 5 | • Opinion addresses the amount of tip credit that can offset minimum wage requirements, *not* credit card tip deductions related to net liquidation expense. (549 F.2d at 305) |

## 2. Plaintiff's Administrative Authorities

1. Plaintiffs also rely extensively on Department of Labor opinion letters, "fact sheets," and related materials. Plaintiffs' Motion at pp. 5, 7-9, 10-12. Respectfully, their argument that these materials are authoritative in insupportable.

2. While they cite a 1944 U.S. Supreme Court opinion, *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), to the effect that "courts... may... resort" to the Department's opinions for guidance, they omit entirely reference to directly applicable case law that holds to the contrary, including but not limited to the U.S. Supreme Court's express holding in 2000 that Department of Labor interpretations of the FLSA "lack the force of law" and "do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (U.S. 2000) (citations omitted).

3. As this Court discussed in *Bollenberg*, and as was made clear by the United States Court of Appeals for the Sixth Circuit in *Myers*, the Dept. of Labor's cramped interpretation of a limit on credit card tip offsets solely to what is charged by a credit card issuer does not properly apply the intent of Congress nor the command of the FLSA. Both *Myers* and cases cited by Plaintiffs demonstrate that this Court is fully authorized to analyze all reasonable expenses in-

9

curred by LEL in providing servers instant cash at the end of each shift.

## V. CONCLUSION

Leasing Enterprises, Ltd. therefore contends it has complied with applicable law in providing its servers with instant cash gratification at the end of each of their shifts, and that the Court should dismiss all allegations in the Complaint that seek to establish an alleged violation of 29 U.S.C. §203(m) premised upon the manner in which Leasing Enterprises, Ltd. handles credit card or debit card transactions and converts these to cash.

Signed this ___16th___ day of April, 2010.

Respectfully submitted,

**JACKSON WALKER L.L.P.**

_____
LIONEL M. SCHOOLER (SBN 17803300)
Federal ID: 726
RICHARD HOWELL (SBN 24056674)
Federal ID: 959050
1401 McKinney Ave., Suite 1900
Houston, Texas 77010
(713) 752-4200; (713) 308-4156 (Fax)
E-mail: lschooler@jw.com

ATTORNEY-IN-CHARGE FOR DEFENDANT LEASING ENTERPRISES, LTD.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Cross-Motion for Partial Summary Judgment of Leasing Enterprises, Ltd. was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, and that a courtesy copy of the Motion was sent by electronic mail to *Counsel for Plaintiff*, Howard L. Steele, Jr. (24002999), Steele Sturm, P.L.L.C., 1000 Louisiana St., Suite 3780, Houston, Texas 77002, on this ___16th___ day of April, 2010.

_____
Lionel M. Schooler

5785215v.4