UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Guillian Steele, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-09-2789 |
| | § | |
| Leasing Enterprises, Ltd., | § | |
| | § | |
| Defendant. | § | |

# Opinion on Partial Summary Judgment

1. *Background.*

Leasing Enterprises, Ltd., owns the Texas chain of Perry's restaurants. Gillian Steele and the other plaintiffs worked at the Perry's Steakhouse & Grille in The Woodlands as waiters and servers.

Perry's passed on the costs of dealing in credit for tips to its tipped employees. These costs exceed the discount charged by the creditors. The parties have both moved for partial summary judgment on whether this deduction is consistent with the Fair Labor Standards Act. Because Perry's cannot directly link the extra costs of computers, supervising labor, and cash deliveries to the paying of credit card tips rather than operating costs, the tipped employees will prevail for those amounts. Because charge-backs and refunds are directly related, Perry's may deduct those.

2. *Credit-Card Tips.*

When Perry's allows its patrons to pay in credit rather than cash, credit companies charge it a discount – a percentage of the amount that the patron charged. This discount varies by credit card, ranging from 1.58% to 2.9%. When a customer pays a tip with credit, Perry's keeps a conversion fee from what it gives its tipped employee. Steele says that Perry's keeps at least 3.25% for all servers and 3.5% when the tipped employee is a captain – a server in charge

of larger tables and banquets. Steele says that 3.25 to 3.5% of credit card tips is more than the discount plus other cost directly related to dealing in credit.

Perry's says that it incurs other costs by allowing its servers to be tipped with credit cards and that those costs account for the difference between the card companies' discount and the 3.25% deducted from its employees' tips. It says that the deduction approximates the cost of the credit tips. An employee tipped in cash does not have either the discount or the other costs withheld. An employee tipped half in cash and half by credit only bears the deduction on her credit tips.

While Perry's can use an average of discount rates to approximate the costs it incurs in converting credit-card tips, that amount cannot be a quarter to a half of a percent higher than the credit card with the highest discount rate. Perry's says that it deducts a higher percent because of equipment, labor, and cash it uses to process the tips. The question is whether Perry's proposed other costs are directly related to the reasonable cost of having its servers tipped with credit.

3.  *Computer.*

Perry's says it offsets credit-card tip expenses by proportionally deducting its computer maintenance, upkeep, security, licensing fees, and upgrades from those employees who have been tipped with credit.

Perry's uses a software program called Aloha for restaurant management. This system tracks sales by category, sales by hours, the menu, shifts, promotions, payments, and deposits, among others. It also automates restaurant operations, reducing labor costs and speeding transactions. While a portion of this system is used to liquidate employees' credit-card tips, it is insubstantial when compared with the general restaurant management tasks that it performs. Perry's secures data on this system with a firewall and maintains the system to run its entire business more efficiently, not just to process tips. It would have a system like this whether or not it allowed patrons to use credit cards at all.

4.  *Labor.*

Perry's says that it has to pay managers for an extra thirty minutes to settle amounts at the end of its shifts and that this time should be deducted from tips. Steele says that Perry's

is really deducting forty-five minutes of managerial time per shift and that it is a reconciliation of amounts owed to the restaurant and to tipped employees.

One consequence of tallying tips at the end of each shift is that the waiters are paid before the banks have authorized the credit-card transactions. Certainly waiters appreciate this, and it benefits Perry's as well. Amounts owed to the restaurant and to workers must be reconciled at some point. Discrepancies can be resolved more easily the closer to the transaction they are identified. If the manager has a question, she can ask the waiter about the customers that he just served. This extra thirty minutes is more accurately described as auditing all transactions, including tips and food charges.

Perry's also includes the time that a secretary in its corporate office spends overseeing payments from the restaurants, which it estimates at thirty minutes a day. Deducting the secretary's time also is not tip-specific. Perry's would need someone to audit employee pay records regardless of the form of the tip.

5.  *Delivery of Cash.*

Perry's says that it needs to have cash delivered to pay its employees their tips at the end of shifts. It says that it would not need to transport cash were it not for these payments. Cash transactions are 15-18% of Perry's business. Perry's says that it uses about $250 per day for customers.

The restaurant needs cash to accommodate its customers, not its employees. If Perry's did not allow credit, it would require more cash deliveries. Dealing in credit is a business decision that Perry's made. While more cash is used to pay servers than to make change, it still keeps $1,000 available for customers. Perry's would have the cash delivered anyway.

6.  *Charge-backs and Refunds.*

When a Perry's customer disputes a charge with the credit company, the company deducts that amount from a future distribution to Perry's. Perry's has already paid the server for this transaction and does not try to recoup that cost from her. Charge-backs and refunds cost Perry's approximately $7,000 in 2007, $4,000 in 2008, and $3,000 in 2009. Charge-backs and refunds are about 0.5% of the total credit-card tips collected and approximately 16% of what Perry's says it deducts from credit-card tips.

The charge-backs and refunds differ from equipment, cash, and labor. In this situation, Perry's bears the full loss of the transaction – the base price and tip. While it has to pay its waiters the minimum wage for hours worked on refunded services, it does not have to subsidize the tip. It may recoup this loss along with the discount fee.

7.  *Conclusion.*

The computer, labor, and cash delivery costs that Perry's has identified are not expenditures associated with credit-card tip collections. They are standard operating costs. Perry's cannot tax the costs of running a restaurant as a credit-conversion fee on its tipped employees.

On the other hand, Perry's can deduct its reasonable expectation of charge-backs and refunds because those bear directly on converting credit-card tips. Accordingly, Perry's motion for partial summary judgment will be denied in part and granted in part. Steele's motion for partial summary judgment will be granted in part and denied in part.

Signed on August 31, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge