IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GIULLIAN STEELE et al. | § § § | |
| vs. | § § | CIVIL ACTION NO. 4:09-CV-02789<br>(COURT UNIT OF JUDGE HUGHES)<br>[JURY TRIAL DEMANDED] |
| LEASING ENTERPRISES, LTD. | § § | |

## DEFENDANT LEL'S RESPONSE TO
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

DEFENDANT LEASING ENTERPRISES, LTD. ("LEL") files this Response to Plaintiffs' Motion for Summary Judgment, **Dkt. No. 147**, (the "Motion") as follows:

## I. SUMMARY OF ARGUMENT

Plaintiffs' Motion asks the Court to "pay no attention to the man behind the curtain," just pay us.[1] It asks the Court not to examine the evidence of LEL's legitimate costs incurred directly because of cashing out tips. It asks the Court not to consider Ms. Steele's retaliation claim. It asks the Court to expand the statute of limitations, but in doing so, relies upon three cases, one abrogated by the Supreme Court, one from the Tenth Circuit which utilizes principles inconsistent with Fifth Circuit practice, and one which does not say what the Plaintiffs allege it does. Its good faith argument is divorced from the facts of the case and misapprehends the state of tip offset law; and its damages claim requests a recovery unjustified on the facts of this case. The Plaintiffs are thus not entitled to summary judgment.

## II. ARGUMENT

### A. LEL SHOULD PREVAIL ON LIABILITY BASED UPON APPLICABLE LAW AND EVIDENCE FROM OTHER RESTAURANTS (RESPONSE TO MOTION AT PP. 2-3)

1. The Plaintiffs allege they have "won" and that the only remaining issue is the

---

[1] As the *Wizard of Oz* taught us, of course, pulling back the curtain exposes a diminished man (or in this case, a cause of action) rather than a great and powerful one.

amount of their alleged damages. Motion at 3. But LEL has demonstrated by its Motion to Reconsider (***Dkt. No. 151***) that the Court's initial, expressly "interlocutory," liability determination with respect to the items that LEL could include in its calculation of the tip offset was based solely on LEL's evidence and Plaintiffs' arguments and addressed solely to LEL's restaurant in The Woodlands. *See **Dkt. No. 49*** at 1; Motion at 2 (Order only addresses The Woodlands location).

2. LEL has now filed substantial summary judgment evidence regarding its other restaurants, which Plaintiffs have not controverted. LEL's summary judgment evidence demonstrates that, in addition to its credit card discount and chargebacks, its currency delivery costs and additional, tip-processing managerial time are tied ***solely to*** credit card tip cash outs for servers. *See, e.g.* ***Dkt. No. 151*** Exhibit "E" at ¶¶ 9, 12 ("the $1,000 threshold for cash on hand for business operations falls below our insurance threshold for risk. ***It is only the deliveries of large sums of cash for distributions among servers that cause… the use of armored car messengers***.") ("If the Restaurant did not have this cashout policy, then I ***would not be required to stay an additional 30 minutes*** at the Restaurant performing the duties specifically related to cashing out the servers…") (emphasis added).

3. Given the nature of the Court's prior ruling is subject to reconsideration and because the summary judgment evidence – in light of applicable law – demonstrates that LEL's four tip-related costs are permissible, LEL contends that liability has not been appropriately or finally determined. Upon a determination in favor of LEL, therefore, the provisional class should be de-certified and Plaintiffs should take nothing by their claims.

### B. STEELE'S RETALIATION CLAIM IS PROPERLY DISMISSED UNDER RULE 56 (RESPONSE TO MOTION AT P. 3, N. 4).

4. The Motion states that Giullian Steele's retaliation claim was not addressed

among its grounds for summary judgment "because of a disputed fact issue." Motion at p. 3, n. 4. Plaintiffs fail to state what the alleged "fact issue" is.[2]

5. There is no dispute that Ms. Steele was fired by LEL for stealing. *See* LEL's Motion for Summary Judgment on Steele's Retaliation Claim, ***Dkt. No. 150***. LEL contends that as a matter of law, Ms. Steele cannot carry her burden of proof on her retaliation claim.

6. First, Ms. Steele's own deposition testimony acknowledged that she believed she was fired for stealing from LEL. She told prospective employers that "the reason for [her] leaving" LEL was "[s]tealing." LEL therefore demonstrates that she was not terminated in retaliation for initiating or prosecuting this suit. *See **Dkt. No. 150*** at 4.

7. LEL also demonstrates that her claim of retaliation for lost shifts was related to LEL's neutral business decision to cancel lunch service that affected all servers at LEL's Woodlands restaurant equally; and that Ms. Steele's work activity was also affected by customer complaints and her admitted failure to comply with basic company rules, all of which occurred in the spring and summer of 2009, before this suit was filed. *Id.* at 4.

8. LEL is therefore entitled to summary judgment on Ms. Steele's retaliation claim.

## C. LEL's Tip Offset Was Not Excessive (Response to Motion at pp. 4-6).

9. During the period between 2007 and 2010, the servers at LEL received more than $24 million in credit card tips. *See **Dkt. No. 151*** at Exhibit "F," Line B (Credit Card Tips Collected). Plaintiffs allege an "overcharge" of $161,374.35 to tipped servers (or no more than 0.6% of all tips), by combining data as to all restaurants and all years, with no exclusions for servers who elected not to join the suit, . Motion at Exhibit 3-B.

10. Although Plaintiffs so alleged in their scattershot initial pleadings, *see* Plaintiffs'

---

[2] This is a curious omission given that Plaintiffs' counsel attended the deposition of Ms. Steele about the circumstances of the termination of her employment and heard her make the admissions highlighted in that proceeding.

Original Complaint (***Dkt. No. 1***), Plaintiffs' First Amended Complaint (***Dkt. No. 12***), and Plaintiffs' Second Amended Complaint (***Dkt. No. 17***), this case does not involve forcing tipped servers to contribute tips to the "house," nor to provide money for the "house" to accrue, nor to distribute tip shares to persons not authorized to receive them. Rather, this case involves the servers' unilateral request to have LEL instantaneously convert their credit card tips to cash at the end of each shift, because the servers have decided that they do not want to wait until the regular pay day to receive such tips.

11. Against that backdrop, LEL contends that its 3.25% credit card tip offset attempted – ***but fell more than $463,000 short of*** – offsetting the costs LEL incurred to convert credit card tips to cash at the end of each shift. *See* ***Dkt. No. 151*** Exhibit "F" at the "bottom line" (Net Loss to Company for Cashing Out Credit Card Tips).

12. Although the FLSA does not "compel employers to contribute anything to any customer's tip," the evidence demonstrates that LEL contributed nearly half a million dollars excess to its servers' tips through un-recovered outlays. *Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 554 (6th Cir. 1999). These outlays were sustained specifically and solely for payment of charged tips to servers, including

        a.     the costs of obtaining the currency for (cash deliveries),

        b.     calculating (excess managerial time),

        c.     clearing (discount),

        d.     cashing out servers for (excess managerial time), and

        e.     addressing problems with (chargebacks)

credit card tips. *See, e.g.* ***Dkt. No. 151*** Exhibit "E."

13. LEL's offset was too small, *not* too large.

**D. PLAINTIFFS CANNOT EXPAND THE STATUTE OF LIMITATIONS ON THE BASIS**

## OF THE CASE LAW CITED FOR WILLFULNESS NOR THE EVIDENCE CITED FOR A WILLFUL VIOLATION (RESPONSE TO MOTION AT PP. 7-9).

### 1. *Martinez v. Food City, Inc.* Is Inapplicable

14. Plaintiffs assert that LEL willfully violated the FLSA – the gateway to a three-year rather than a two-year limitations period – under the wrong standard and evidence which does not raise a genuine issue of material fact.

15. First, Plaintiffs cite *Martinez v. Food City, Inc.*, 658 F.2d 369, 375 (5th Cir. 1981) for the proposition that willfulness may be decided in their favor in this case as a matter of law. Motion at 7. .

16. LEL contends that *Martinez* is inapplicable and is also inconsistent with United States Supreme Court precedent. *Martinez* is inapplicable because it was premised upon the employer's admission of actual knowledge of violative conduct. *Id.* at 375. By contrast, Plaintiffs in this case make no assertion of actual knowledge of a violation, citing instead to "reckless disregard" jurisprudence. Further, they submit no evidence to "prove" that any alleged violation was committed with actual knowledge.[3]

17. Moreover, the *Martinez* decision is no longer good law because it holds that the "test" for a willful violation is whether "the employer kn[e]w the FLSA was in the picture." *Id.* (citing *Coleman v. Jiffy-June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1971)). The United States Supreme Court's 1988 decision in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988), expressly abrogated the *Jiffy June* standard and any cases that relied upon it. *Id.* ("It is equally obvious to us that the *Jiffy June* standard of willfulness – a standard that merely requires that an employer knew that the FLSA "was in the picture" – virtually obliterates any

---

[3] As set forth in its Motion for Partial Summary Judgment as to the Statute of Limitations, **Dkt. No. 149**, LEL has submitted substantial evidence that any violation found by the Court, if any, was not willful and certainly not done with actual knowledge.

distinction between willful and nonwillful violations"). Thus, Plaintiffs' reliance on *Martinez* is misplaced.

### 2. Current Standard for Willfulness In Fifth Circuit

18. Second, the current standard in the Fifth Circuit is that summary judgment for plaintiffs on the issue of willfulness is inappropriate unless the plaintiffs conclusively prove willfulness and the defendant fails to produce any conflicting summary judgment evidence. *See Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, 579 F.3d 546, 552-53 (5th Cir. 2009) ("Ikossi-Anastasiou") (also holding that where a plaintiff conclusively proves a violation but fails to prove actual knowledge or ignorance or failure to investigate a claim, the "allegations of willfulness cannot survive summary judgment" and "the two year statute of limitations applies").

19. While acknowledging the *McLaughlin* standard of willfulness, Plaintiffs cite to *Burns v. Tex. City Refining*, 890 F.2d 747, 751 (5th Cir. 1989) for the proposition that "all reasonable inferences in determining whether an employer's violation was willful must be made in the plaintiffs' favor." Motion at 7). LEL contends that Plaintiffs' reliance upon *Burns* is also misplaced.

20. In *Burns*, the Fifth Circuit considered whether the issue of willfulness should have been submitted to the jury. 890 F.2d at 749-50. Thus, the context of the analysis of the willfulness issue in *Burns* was from the perspective of "directed verdict" jurisprudence. *Id.* at 750-51. In reviewing the district court's decision to deny the directed verdict on the issue of willfulness, the *Burns* Court held that the district court properly made "all reasonable inferences from the evidence in favor of [the plaintiffs]." *Id.* at 751.

21. *Burns* was not a summary judgment case, and the Fifth Circuit ***did not*** hold that when a plaintiff who moves for summary judgment on its willfulness claim it is entitled to

receive all inferences against the employer. *See id.*

22. In fact, as the Court is aware, the standard on summary judgment is just the opposite. *See Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 471 (5th Cir. 2010) (FLSA case) (When reviewing a summary judgment, "[w]e view the evidence in the light most favorable to the nonmovant, drawing all reasonable inferences in the nonmovant's favor.").

### 3. Applicable Law on Reckless Disregard

23. Fourth, the Plaintiffs fail to cite the applicable precedent for "reckless disregard" from this circuit. On page 7 of their motion, Plaintiffs cite a decision from the United States Court of Appeals for the Tenth Circuit, *Mumby v. Pure Energy Servs. (USA), Inc.*, ___ F.3d ___, 2011 WL 590349 (10th Cir. 2011), as establishing the applicable "reckless disregard" standard. They completely overlook *Ikossi-Anastasiou*, 579 F.3d at 554, the leading precedent in the Fifth Circuit, which holds that a determination of "reckless disregard" requires a finding that the employer willfully ignored and failed to investigate alleged FLSA infractions. *Id.*.

24. Under the *Ikossi-Anastasiou* test, the Plaintiffs' attempt to obtain summary judgment fails:

    a. Plaintiffs have failed to carry their burden to demonstrate actual knowledge of a violation.

    b. According to the deposition testimony of the lead plaintiff, no tip offset violation was ever reported to LEL. *See* **Dkt. No. 149** at 8 (Ms. Steele admits she never voiced with anyone in LEL's management her alleged concerns about the tip offset or informed them of her alleged belief that the policy was improper).

    c. The Department of Labor conducted an investigation of LEL in 2003 and 2004, *Id.* at 7, but on other matters, and when its lead investigator was asked to and did look into LEL's offset program, he determined that everything about LEL's handling of the tip offsets was in order and in compliance with the FLSA. *See id.* at pp. 7-8.

25. Accordingly, Plaintiffs have failed to produce summary judgment evidence to

demonstrate that LEL either willfully ignored or failed to investigate any FLSA infractions. To the contrary, the evidence demonstrates that LEL had the Department of Labor's assurance that once it had corrected the issues raised in that investigation, LEL's tip offset program was not being operated in violation of the law.

26. LEL therefore contends that Plaintiffs have failed to carry their Rule 56 burden on the issue of willfulness, that LEL has, and that therefore LEL should be granted summary judgment on the issue of willfulness.

### E. LEL ACTED IN GOOD FAITH (RESPONSE TO MOTION AT P. 10).

27. Plaintiffs assert that LEL cannot establish a good faith defense because LEL has "no legal authority" for deducting its tip offset costs and Plaintiffs "proved" that "an employer is limited to deducting the costs that it incurred directly from the credit card companies." Motion at 10.

28. LEL contends that this assertion is incorrect. First, in *Myers v. The Copper Cellar Corp.*, the United States Court of Appeals for the Sixth Circuit held that "an employer may **subtract a sum** from an employee's charged gratuity **which reasonably compensates it for its outlays sustained** in clearing that tip, without surrendering its section 203(m) partial set-off against minimum wages." 192 F.3d 546, 553 (6th Cir. 1999) (emphasis added). Such sum may "include[e] **any funds required** to 'cash out' a charged tip." *Id.* at 554 (emphasis added).

29. Next, in *Bollenberg v. Landry's Restaurant*, this Court expressly stated that the employer's costs associated with cashing out servers may trigger legitimate items such as "excessive bookkeeping" costs and costs to obtain American currency, such as the currency conversion cost associated with a money exchange. 2005 WL 2121810 at *3-4 (S.D. Tex. 2005) (Hughes, J.).

30. To the best of the undersigned counsel's knowledge, there is no contrary

precedent from the courts in this circuit or any other circuit court (and Plaintiffs have cited none) that conflicts with the holding of this Court in *Bollenberg* on the issue of the deductibility of excessive bookkeeping costs and the costs of obtaining currency and the holding of *Myers* that an employer may deduct the "any funds required" to cash out a server for a charged tip.

31. LEL considered precisely these kinds of costs when utilizing its tip offset. LEL's practices were conducted in good faith and with a reasonable belief that its actions conformed to the FLSA.

32. In addition to its reasonable reliance on the law, LEL further relied upon the evaluation by the Department of Labor of compliance. ***Dkt. No. 149*** at .

33. Plaintiffs are not entitled to summary judgment on LEL's good faith defense. If the Court resists reconsideration of its prior ruling on liability, the Court should grant summary judgment for LEL on its good faith defense. As a result, no "extra statutory damages" are warranted in this case.

### F. DAMAGES: NO CALCULATION OF DAMAGES APPROPRIATE WITHOUT EVALUATING ELIGIBILITY TO BE AWARDED SUCH DAMAGES (RESPONSE TO MOTION AT PP. 10-16).

34. If the Court does not grant LEL's Motion to Reconsider, then LEL submits to the Court that it should exercise particular scrutiny over the claims filed by the named plaintiffs and the claimants. As it has demonstrated in its Motion to Exclude Non-Qualified Claimants, ***Dkt. No. 148***, LEL contends that Plaintiffs' damage "estimate" fails to take into consideration claimants who were never servers during any period applicable to this case, nor those servers who are or should be time-barred from receiving compensation. *See **Dkt. No. 149*** (LEL's Motion for Partial Summary Judgment on Limitations).

35. Because these groups potentially include approximately one fifth or more of all of the claimants, LEL contends that the gross amount of Plaintiffs' asserted damage claim cannot

withstand scrutiny. LEL requests that if the Court grants summary judgment for the Plaintiffs, it permit LEL conditionally to submit rebuttal evidence as to a correct damage amount.

### III. PRAYER

Defendant Leasing Enterprises, Ltd., prays that the Court deny Plaintiffs' Motion for Summary Judgment and grant LEL such other relief to which it may show itself to be justly entitled.

Signed this 28th day of April, 2011.

                Respectfully submitted,

                **JACKSON WALKER L.L.P.**

                /s/ Lionel M. Schooler
                LIONEL M. SCHOOLER (SBN 17803300)
                Federal ID: 726
                RICHARD A. HOWELL (SBN 24056674)
                Federal ID: 959050
                1401 McKinney Ave., Suite 1900
                Houston, Texas 77010
                (713) 752-4516 (Direct)
                (713) 308-4156 (Direct Fax)
                E-mail: lschooler@jw.com

                ATTORNEY-IN-CHARGE FOR
                DEFENDANT LEASING ENTERPRISES,
                LTD.

### CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above Defendant LEL's Response to Plaintiffs' Motion for Summary Judgment was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, and that a courtesy copy of the Report was sent by certified mail, return receipt requested, and by fax transmission to *Counsel for Plaintiff*, Howard L. Steele, Jr. (24002999), Steele Sturm, P.L.L.C., 700 Louisiana, 48th Floor, Houston, Texas 77002, on this 28th day of April, 2011.

                /s/ Lionel M. Schooler
                Lionel M. Schooler