```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
                    HOUSTON DIVISION

GIULLIAN STEELE, ET AL        )     NO. 4-09-CV-02789
                              )
                              )
VS.                           )     Houston, Texas
                              )     10:30 a.m.
                              )
PERRY'S RESTAURANT, LLC       )     October 8, 2014


   ***********************************************

                         HEARING

         BEFORE THE HONORABLE LYNN N. HUGHES

              UNITED STATES DISTRICT JUDGE

   ***********************************************

APPEARANCES:

FOR THE PLAINTIFFS:

     Mr. Howard L. Steele, Jr.
     Mr. Tyrone L. Haynes
     Steele Law Group
     700 Louisiana, Suite 3950
     Houston, Texas  77002
     Tel:  713-659-2600
     Email:  hsteele@steele-law-group.com

             -and-

     Mr. Charles Alfred Sturm
     Sturm Law, PLLC
     723 Main Street, Suite 325
     Houston, Texas  77002
     Tel:  832-477-1400
     Email:  csturm@sturmlegal.com
```

```
 1  FOR THE DEFENDANT:
 2       Mr. Lionel M. Schooler
         Mr. Richard A. Howell
 3       Jackson Walker, LLP
         1401 McKinney Street, Suite 1900
 4       Houston, Texas   77010
         Tel:  713-752-4200
 5       Email:  lschooler@jw.com
                 rahowel@jw.com
 6
 7
    Proceedings recorded by mechanical stenography.
 8  Transcript produced by computer-assisted transcription.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

10:31:45

10:31:54

10:32:10

10:32:22

10:32:37

1    THE COURT:  Where is our damage model?
2    MR. SCHOOLER:  Ready to introduce it, Your
3 Honor, if you are ready to proceed.
4    THE COURT:  Is it agreed?
5    MR. STEELE:  It is, Judge.  And, you know,
6 there is only one little thing, and I don't think it takes
7 today at all --
8    THE COURT:  It is obvious that Ms. Taylor has
9 been working on it.  That's the only thing I can -- well,
10 they have been working on the case for four years, and
11 haven't gotten any where with it, so it has to have been
12 the only fresh face.
13    MR. STEELE:  So Mr. Schooler made his damage
14 model through the trial date, and I -- for once I think he
15 is right, because there was no evidence -- although we know
16 they are still doing the same thing, there was no evidence
17 before Your Honor after that date, about are they still
18 doing the same thing.
19    So, for purposes of today, I think he's
20 right.  I -- I agree with the fact that it has to go to
21 that date for today, unless we did something else.  And I
22 agree with -- we have checked all the plaintiffs, they look
23 right, and I think he's got it right.
24    THE COURT:  Well, wouldn't Steele be
25 inclined -- I mean, not Steele, Perry, be inclined to do

```
                1  the right thing after the judgment date?
                2              MR. SCHOOLER:  What is your definition of doing
                3  the right thing, Your Honor?
                4              THE COURT:  Obeying the law.
10:32:52        5              MR. SCHOOLER:  Yes, Your Honor.  That's in
                6  place.
                7              THE COURT:  All right.
                8              MR. SCHOOLER:  I have marked for the Court's
                9  record Exhibits A and B, and I'll hand those to the
10:33:03       10  appropriate official.
               11              Exhibit "A" is the detailed chart of all
               12  of the collective action members.  I believe there are 323
               13  of those.  It goes line by line with each one and gives you
               14  the detail on any wages accrued for each person.  It also
10:33:23       15  in the salmon-colored lines shows people who were not
               16  eligible to participate either because they did not work
               17  during the appropriate time period, or they did not work as
               18  a server during the appropriate time period.
               19              Exhibit "B" is a summary of Exhibit "A" in
10:33:40       20  black and white, which just has the last name and file
               21  number of the participant, and some appropriate hiring and
               22  term dates, and then the summary of the amount.  And file
               23  number in this chart, Your Honor, refers to the Court's
               24  designated collective action file number based on when the
10:34:01       25  consent was received, with the Court.
```

```
10:34:53


10:35:09



10:35:29




10:35:48




10:36:12
```

 1                THE COURT:  I don't see any of those super
 2   secret numbers that you're not supposed to put in the
 3   record for these people.  I mean, Putin, and Snowden, and
 4   CIA, and some kid in Baltimore already have them.
 5                MR. SCHOOLER:  Yeah, we intentionally omitted
 6   the Social Security number, Your Honor.  Given the way in
 7   which these people opted in, for the most part, we felt
 8   that they could readily be identified by their file number
 9   with the Court and their consent to timing.
10                THE COURT:  Do you have a plan for what the
11   judgment should look like?
12                MR. STEELE:  Yes, Your Honor.  If Your Honor
13   approves, the judgment will be moved for entry of judgment,
14   I can send you one over today.
15                THE COURT:  Well, but --
16                MR. STEELE:  You're outthinking me.  You're
17   thinking of something.  What is it?
18                THE COURT:  I don't want to replicate the
19   schedule.  So we file this, and the judgment will say based
20   on the award of 1.4 million dollars, whatever it is, will
21   be disbursed by Perry's, something like that.  I mean, I
22   don't want to list --
23                MR. STEELE:  No.  Right.  The only thing I
24   would point out with regard to the judgment is your
25   findings of fact and conclusions of law did not find that

```
         1  the employer acted in good faith, and knew what they were
         2  doing.  In fact, you and I chatted during the course of
         3  these many years, you and I talked about, I think that, you
         4  know, if a federal judge tells you you done something
10:36:25 5  wrong, all the other cases say that that even gets you the
         6  three-year statute, you understandably said, hey, look this
         7  is interlocutory, Mr. Steele.  And so I am going to go two
         8  years and I am with you.  I think that is a fair analysis.
         9  But I do not think that --
10:36:39 10             THE COURT:  If I had ruled against you, you
        11  wouldn't have believed me.  So why -- when I rule against
        12  him, why should he believe me?
        13             MR. STEELE:  But I do think, Your Honor, in
        14  your findings of fact you did not find and your conclusions
10:36:50 15 of law did not find that the employer acted in good faith
        16  in doing what they were doing; and as a result liquidated
        17  damages are automatic.  That's what the statute provides.
        18             THE COURT:  Well, I will make the additional
        19  finding that Perry's made a mistake.  They were trying to
10:37:05 20 do it.  It's a complicated law.  It evolved.
        21             MR. STEELE:  I would --
        22             THE COURT:  Do you understand that -- wasn't
        23  exactly a Fair Labor, but United States Treasury underpaid
        24  federal judges since 1906.
10:37:22 25             MR. STEELE:  I have heard that a few times.
```

1   THE COURT: I mean, not 1906. 2006. And
2 somebody that's a lot more careful with his money than I am
3 sat down and figured that out, and so they paid us this
4 year the arrearage without penalty, interest, and all those
5 things other people get today.
6   MR. STEELE: The only thing I would add, Your
7 Honor, you -- you have taught me a lot over the years, and
8 I have yelled at you a few times. You yelled at me a lot
9 more. I would only say this: That the good faith basis
10 under the law to be able to get there, is more than just a
11 mere mistake. It is they have got some -- Mr. -- and I
12 assure you, if Mr. Schooler had been involved in this from
13 the very beginning, you would say, Mr. Steele, it's good
14 faith because Schooler told them that he thought it was
15 okay.
16   There was no evidence, it wasn't put on at
17 trial, they did not put on a scintilla of evidence that
18 they did anything under good faith. I agree with you.
19 Lots of employers --
20   THE COURT: What do you do? Get a nun to come
21 in here and say Perry has always been a good boy?
22   MR. STEELE: Your Honor --
23   THE COURT: The data --
24   MR. STEELE: And that is the answer, yes, you
25 go to the DOL, you get an opinion letter. You get a good

1  darn lawyer like Mr. Schooler to say, am I doing it right?
2  And that is the standard of review, and I would only --
3              THE COURT:  And that is what the evidence shows
4  here.  I have been listening to you all.  This is not
5  Geraldo.
6              MR. STEELE:  I am with you.
7              THE COURT:  And --
8              MR. SCHOOLER:  Your Honor, I would suggest with
9  regard to the logistics regarding the judgment, which I
10 think is what you were addressing a moment ago, you're
11 obviously going to identify a total amount in the judgment
12 per the schedule to present it to you.
13             I would like to suggest kind of as we do
14 in a situation where an employer is dealing with the
15 Department of Labor directly, since Mr. Steele has had the
16 contact with these people and knows where they are now,
17 that we would submit to him the appropriate proceeds for
18 him to disburse them to his clients.  And that we --
19             THE COURT:  How many of them still work for
20 you?
21             MR. SCHOOLER:  I don't know the answer to that,
22 Your Honor, because we only go through last May on the
23 chart, May a year ago.  So I'm not sure of the answer to
24 that.
25             THE COURT:  Well, I think for the ones who are

1 still employed, Perry should do it.
2             MR. SCHOOLER:  Okay.
3             THE COURT:  For those who no longer work for
4 Perry, I think it is your responsibility.
5             MR. SCHOOLER:  Right.  And I should also make
6 clear, Your Honor, obviously we have prepared this chart at
7 your direction.  It's not waiving our positions regarding
8 certain issues in the case, and it's not clear to me at
9 this point whether money will be sent to Mr. Steele, or a
10 supersedeas bond.  That is something that is being
11 discussed.
12             THE COURT:  Doesn't make any difference.  The
13 judgment is going to be the same.
14             MR. SCHOOLER:  Right.
15             THE COURT:  Or if he flees the country, the
16 judgment will be the same.
17             MR. SCHOOLER:  Right.  Your Honor, Ms. Galvin
18 just indicated to me that there are 26 people on the list
19 who are still employed.  We will identify those and let
20 Mr. Steele know who they are.
21             THE COURT:  Who are still employed?
22             MR. SCHOOLER:  Still employed, yes, Your Honor.
23             THE COURT:  Okay.
24             MR. SCHOOLER:  Out of the 323.
25             THE COURT:  I want Perry's to write the checks

```
 1  to these people, and then deliver them to Mr. Steele.  I
 2  don't want to give him a lump sum.
 3              MR. SCHOOLER:  Okay.
 4              MR. STEELE:  I think that is right.
 5              THE COURT:  I mean, that way -- I mean, Perry's
 6  needs all that in their records for their -- for their 940
 7  or whatever it is.
 8              MR. STEELE:  That is the way I have always done
 9  it, too.  I think that is the way we --
10              MR. SCHOOLER:  You have --
11              THE COURT:  You have never won one before.
12              MR. STEELE:  I have, too.  You know what, and I
13  was going to tell you, I won a jury trial in front of Judge
14  Ellison on the same thing, not as many plaintiffs.  But I
15  never had to try a jury trial on one of these, and we went
16  all the way to trial.
17              THE COURT:  That's why we have juries.
18              MR. STEELE:  That's right.
19              THE COURT:  Sometimes people just need -- one
20  side or the other needs normal people to tell them they're
21  wrong.
22              All right.  Well, I will do a supplemental
23  explicit finding of fact.
24              MR. STEELE:  Should have kept my mouth shut,
25  huh?
```

1   THE COURT: Yes. I thought what I had already
2 said was enough. But I don't want to create, you know, an
3 issue when I didn't intend one. So I'll do something about
4 the good faith, and --
5   MR. STEELE: I would beg of you to read a
6 couple of those cases just for me to maybe sleep well and
7 be able to tell my clients.
8   THE COURT: And have we talked about attorneys'
9 fees?
10   MR. STEELE: So attorneys' fees are part of
11 costs under FL 10, like a lot of the other stuff. So like
12 I said, with Judge Ellison, when I won that trial, I filed
13 an application; and they appealed it with the Fifth
14 Circuit, and it got approved. So I am pretty good on how
15 to do it. I also have one in front of Judge Rosenthal, and
16 it is a big pain-in-the-butt process, and she affirmed
17 mine, too.
18   So what I'll do is -- it's a lot of work
19 -- and I am going to have to use my billing judgment,
20 pretend like it's billing a client, cut my fees down to
21 what I think is reasonable and necessary for the Houston
22 marketplace. I'll have a big long affidavit that explains
23 all that.
24   THE COURT: I don't want you to use billing. I
25 want you to use your collection rate. You know, I was once

1  a lawyer.

2          MR. STEELE: I know that.

3          THE COURT: And I billed, I don't know, back
4  then $500,000 a year. And so if you use the 2000, divide
5  it, that was great. Except that wasn't what I was making.
6  And so you -- you need to do it on your collection rate.

7          MR. STEELE: What I do on all these cases is
8  the Texas State Bar puts out a really good publication on
9  the average billing rate for all --

10          THE COURT: I don't want an average.

11          MR. STEELE: And so I use mine.

12          THE COURT: You want me to make an additional
13  finding about whether you're above average, average, or
14  below average?

15          MR. STEELE: Well, you already know that.

16          THE COURT: I want to know how you -- how long
17  you been practicing law?

18          MR. STEELE: Since -- well, I passed the bar in
19  1997.

20          THE COURT: Okay. And did you fight in foreign
21  wars or something for a while?

22          MR. STEELE: No, no. So that's when I started
23  practicing, '97.

24          THE COURT: Okay. Started practice. You know
25  how much money you're making, and what kind of -- if you

1  have a paying client, what paying clients actually pay you,
2  and when it is reasonable and necessary.
3              MR. STEELE:  Right.
4              THE COURT:  I don't want to factor in all these
5  other people.  I like disaggregated data.  He will tell you
6  what that means.
7              MR. STEELE:  What I have done, and you can tell
8  me if you like this or not.  For these FLSA cases, they're
9  not real complicated.  They're not real --
10             THE COURT:  No.  You-all managed to make this
11 one last five years because it was simple.
12             MR. STEELE:  They're complicated with regard to
13 the regs and stuff, but they're not like the trade secret
14 cases that Charlie and I try.  So we use a much lower rate
15 than we normally do, and then we cut the time that -- you
16 know, there is a little of bit of learning while you're
17 earning for associates.  Mr. Haynes just got done with a
18 clerkship here, and he is learning, too.  So we cut those
19 rates.  And I put that all in an affidavit and lay it for
20 you, and it is exactly what you said.  It --
21             THE COURT:  I notice you didn't say anything
22 about the potential learning of the part of Mr. Sturm.
23             MR. STURM:  Negative, Judge.  That's why he
24 didn't say it.
25             THE COURT:  I did the best I could.  You're

```
 1  stuck now.
 2              MR. STEELE:  But I will get that to you very
 3  quickly.  We have been putting it together.  Mr. Schooler
 4  actually was Johnny-on-the-spot and asked me for the
 5  records, but I didn't want to give him raw data.  I wanted
 6  to give him a gussied up one that was like --
 7              THE COURT:  He needs the manipulated data.  He
 8  may still want to see it.  Gussied up, that's an
 9  old-fashioned term.
10              All right.  Does that sound proper?
11              MR. SCHOOLER:  Raw data has an attraction to me
12  as well as gussied up, so I'll take both since given the
13  standard that you have to apply in determining the
14  appropriate fee.
15              MR. STEELE:  And I don't mind doing them both.
16              THE COURT:  I know.  Give him a distilled,
17  summarized, organized version or something, but check into
18  the data.
19              MR. STEELE:  I will.  I told him he was right
20  today.  I would like for him to say I was right on the next
21  one.
22              THE COURT:  I am not sure it works that way.
23  You know, just sometimes he gets one, you may not get one.
24  Like, you know, when you-all go fishing together, sometimes
25  you get one and he doesn't.
```

1                    All right.  Anything else we can do this
2  morning?
3              MR. STEELE:  Don't think so, Your Honor.
4              MR. SCHOOLER:  I don't believe so, Your Honor.
10:46:24   5              THE COURT:  All right.  I would rather you take
6  a little time, get some help, do it right, than get it to
7  me really quickly.
8              MR. STEELE:  Okay.
9              THE COURT:  It is a little late to rush the
10:46:37  10  case.  And then your responses as soon as reasonable.
11             MR. SCHOOLER:  Yes, Your Honor, I understand.
12  Thank you.
13             THE COURT:  Thank you.
14             MR. STEELE:  Thank you, Your Honor.
10:46:47  15             THE CLERK:  All rise.
16             (Proceedings adjourned.)
17
18                  COURT REPORTER'S CERTIFICATE
19
20     I, Kathleen K. Miller, certify that the foregoing is a
21  correct transcript from the record of proceedings in the
22  above-entitled matter.
23
24                        /s/
                          _____
                          Kathleen K. Miller, RPR, RMR, CRR
25