| United States District Court | Southern District of Texas |
|---|---|

Giullian Steele, *et al.*,　§
　　　　　　　　　　　　　§
　　　　Plaintiffs,　　　　§
　　　　　　　　　　　　　§
*versus*　　　　　　　　　§　　Civil Action H-09-2789
　　　　　　　　　　　　　§
Perry's Restaurant, LLC, *et al.*,　§
　　　　　　　　　　　　　§
　　　　Defendants.　　　 §

# Amended Findings of Fact and Conclusions of Law

1. *Introduction.*

   When diners paid with credit, a restaurant kept a share of its servers' tips. It says that it retained this money because the deduction approximated its cost to deal in credit. It did not. The fee is substantially higher than the restaurant's reasonably direct costs from accepting credit. The servers have sued the restaurant for their wages. They will prevail.

2. *Perry's Operations.*

   Leasing Enterprises, Ltd., owns Perry's Restaurant, LLC. Servers at Perry's earn $2.13 per hour in base pay. From tips, its servers earns more than $40,000 annually. When a customer pays and tips with credit, Perry's retains 3.25% of the tip.

3. *Direct Expenses.*

   Ninety-five percent of Perry's business is done through credit. It pays four categories of fees to deal in credit: (a) swipe fees; (b) charge backs; (c) void fees; and (d) manual-entry fees.

   When a diner pays with credit, Perry's typically swipes the diner's card. It pays the credit company a fee ranging from 1% to 2.9% of the face amount for this service. Most credit companies charge Perry's a fee of roughly 2%. American Express charges 2.9%, but it only accounts for 35% of credit at Perry's.

Rarely, a diner has his credit company refuse charges from Perry's. When Perry's does not get paid because of these charge backs, it allows its staff to keep their tip even though it did not receive money from the diner for the food or the tip.

Credit companies also charge a fee when Perry's voids a transaction. Void fees are 40% of the original credit fee of around 2% – approximately 0.8% of the canceled bill. If Perry's manually enters a credit number – as opposed to swiping a card – it pays an additional 20 to 40% of the original credit fee.

Perry's says that it does not know how many voids, charge backs, or manual entry fees it pays, but it concedes that most fees are swipe fees. Aggregating all of the fees it pays for swipes, charge backs, manual entries, and voids, it pays no more than 2.5% on average.

Between 2007 and 2010, Perry's kept more of its waiters' tips than its direct cost to deal in credit from swipes, voids, charge backs, and manual entries. The amount it retained from its staff did not approximate its expenses.

4. *Indirect Expenses.*

Although Perry's deals almost exclusively in credit, it pays its waiters their tips in cash at the end of shifts. To have enough cash, it pays an armored car to deliver several hundred thousand dollars to its restaurant each week. Most of this cash is used to pay waiters their tips.

At the end of each shift, the bartender and manager reconcile the tips. The servers may not leave until the restaurant verifies the receipts match the tips claimed. Perry's pays the manager, bartender, and servers for this time – roughly 30 minutes.

If Perry's only accepted cash, it would still need cash deliveries, bookkeepers, and reporting for tax purposes. Both of the witnesses from Perry's – the chief operating officer and a manager – did not know if it would have had more expenses from bookkeeping, cash deliveries, and tip reconciliation in an all-cash restaurant.

5. *Agency Investigation.*

The Department of Labor investigated Perry's in 2004 and 2006. The 2004 investigation was about an irregular tip pool and Perry's requirement that its servers buy their own uniforms. The 2006 investigation was about the payroll system's not including overtime hours for some employees. Neither investigation was about credit fees.

6. *Liability.*

In August of 2010, this court ruled that Perry's 3.25% fee violates the Fair Labor Standards Act because it is substantially higher than its reasonably direct cost to deal in credit. Because no credit company charges more than 2.9% and most charge closer to 2%, the 3.25% fee exceeds its direct credit fees.

Although credit companies also charge Perry's fees to cancel a transaction and to manually enter a credit number, these fees occur rarely. They negligibly affect its total cost to deal in credit. Perry's also cannot precisely account for these indirect costs. To effectively rely on them, it must be able to quantify them. It has not.

Perry's has other related costs that could be considered, including those from cash deliveries, bookkeeping, and reconciliation of cash tips. Assuming the court included all of these indirect expenses, Perry's 3.25% fee is still consistently higher than its costs.

Its cash-delivery expenses may not be included because the restaurant would need cash delivered more frequently if it only accepted cash. The restaurant's decision to pay it servers in cash is a business decision, not a fee directly attributable to its cost of dealing in credit.

Its bookkeeping and reconciliation expenses are ordinary operations – unconnected to the use of credit. Cash restaurants have higher bookkeeping costs because computers can almost automatically do most of the accounting.

Perry's 3.25% fee violates the Fair Labor Standards Act.

7. *Willfulness.*

Under the Act, a worker may recover lost wages for the past two years. If her employer willfully violated the law, she may recover for the past three years. An employer willfully violates the Act if it knew or recklessly disregarded that its conduct was illegal.[1]

A worker's past complaints do not show wilfulness if her employer did not know its conduct was illegal and it reasonably investigated those complaints.[2] Because the Department of Labor's investigations of Perry's in 2004 and 2006 were not about credit fees, they do not show Perry's knew or recklessly disregarded the illegality of its 3.25% fee.

---

[1] McLaughlin v. Richland Shoe Co., 486 U.S. 128, 130 (1988).

[2] Ikossi-Anastasiou v. Bd. of Supervisors of Louisiana State Univ., 579 F.3d 546, 552 (5th Cir. 2009).

In 2006, the Department of Labor concluded in an opinion letter about a different case – with different parties and different facts – that a 5% offset willfully violates the Act. Steele says that this is the same scheme that Perry's operated. It is not. The 3.25% fee was not grossly inaccurate. A bureaucrat's opinion is also not the law.

Steele last says that the restaurant continued to charge its employees 3.25% after this court ruled that it was illegal. Because the judgment was interlocutory and the opinion is about an unsettled area of law, it does not show willfulness.

Perry's did not willfully violate the Fair Labor Standards Act.

8. *Tolling.*

Steele and the original plaintiffs may recover for wages lost in the two years preceding the filing of their complaint. The other members of the class may recover for wages lost in the two years preceding when they joined the class.[3]

When the court delayed certifying the class to ensure there was an underlying claim, Perry's stood to benefit from the possibility of early dismissal. It is seemingly inequitable to allow the class to recover less because the restaurant asked the court to rigorously examine their claims before certification.

Despite these reservations, the court will not toll the statute of limitations because the law does not allow for it on these facts. Equitable tolling is only allowed in exceptional circumstances like when an employer actively misleads the employee or prevents her from asserting her rights.[4]

The statute of limitations will not be equitably tolled.

9. *Reasonableness and Good Faith.*

Under the Act, liquidated damages are mandatory unless the employer shows that it acted reasonably and in good faith.[5] An employer acts reasonably if it pays its employees under

---

[3] 29 U.S.C. § 256 (2012).

[4] Teemac v. Henderson, 298 F.3d 452, 457 (5th Cir. 2002); Whitt v. Stephens County, 529 F.3d 278, 283 (5th Cir. 2008).

[5] 29 U.S.C.A. § 260 (2012).

a reasonable belief that its fee-deduction plan conforms with the law; an employer acts in good faith when it investigates the potential liability of its fee-deduction plan.[6]

Perry's established a fee-deduction plan that was less than 1% higher than the national-average of fees imposed by card companies. Next, it consulted a representative from the department of labor about its potential liability from the 3.25% fee. Perry's was told that the fee-deduction plan conformed with the Act. With this advice, Perry's deducted the fee. Steele has not shown that Perry's unreasonably relied upon or sought this advice in bad faith.

Once again, the Department of Labor's unrelated investigations do not show that Perry's acted unreasonably or in bad faith by imposing the fee. Steele says that the restaurant continued to charge its employees 3.25% after this court ruled that it was illegal. Perry's reasonably waited for a final judgment on an unsettled area of law before changing its practice. Bad faith cannot be imputed to Perry's for a judgment that occurred after the fee system was established.

Perry's acted reasonably and in good faith.

10. *Retaliation.*

Steele says Perry's Restaurant, LLC, retaliated against her for bringing this lawsuit by giving her less desirable shifts and firing her. Her evidence for retaliation is the temporal sequence of events. Perry's did not retaliate. She lost her preferred shift because the restaurant stopped serving lunch regularly, and she was fired because she admitted to stealing a bottle of wine.

Perry's did not retaliate against Giullian Steele.

---

[6] Bernard v. IBP, Inc. of Neb., 154 F.3d 259, 267 & n. 34 (5th Cir.1999).; Barcellona v. Tiffany English Pub, Inc., 597 F.2d 464 (5th Cir.1979).

11. *Conclusion.*

Perry's took more money from its servers than its combined expenses – direct and indirect – to deal in credit. Because Perry's nevertheless tried to comply with the Act, the statute of limitations will be two years. It began to run for each plaintiff when they joined the lawsuit.

Signed on February 24, 2015, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge